**FILED**
**United States Court of Appeals**
**Tenth Circuit**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**February 25, 2019**

**FOR THE TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

———————————————————

DARLENE COLLINS; BAIL BOND
ASSOCIATION OF NEW MEXICO;
RICHARD MARTINEZ; BILL SHARER;
CRAIG BRANDT; CARL TRUJILLO,

      Plaintiffs - Appellants,

v.

Nos. 17-2217 and 18-2045

CHARLES W. DANIELS; EDWARD L.
CHAVEZ; PETRA JIMENEZ MAEZ;
BARBARA J. VIGIL; JUDITH K.
NAKAMURA; NEW MEXICO
SUPREME COURT; NAN NASH; THE
SECOND JUDICIAL COURT; HENRY
A. ALAINZ; ROBERT L. PADILLA;
BERNALILLO COUNTY
METROPOLITAN COURT; JAMES
NOEL; BERNALILLO COUNTY;
BOARD OF COUNTY
COMMISSIONERS, COUNTY OF
BERNALILLO,

      Defendants - Appellees.

———————————————————

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:17-CV-00776-RJ-KK)**

———————————————————

Richard Westfall, Hale Westfall, Denver, Colorado (A. Blair Dunn and Dori E. Richards,
Western Agriculture, Resource and Business Advocates, LLP, Albuquerque, New
Mexico, with him on the briefs), appearing for Appellants.

Ari Biernoff, Office of the New Mexico Attorney General, Santa Fe, New Mexico, appearing for Appellees Charles W. Daniels, Edward L. Chavez, Petra Jimenez Maez, Barbara J. Vigil, Judith K. Nakamura, the New Mexico Supreme Court, Nan Nash, the Second Judicial Court, Henry Alainz, Robert Padilla, the Bernalillo County Metropolitan Court, and James Noel.

Brandon Huss, The New Mexico Association of Counties, Santa Fe, New Mexico, on the brief for Appellee County Commissioners of the County of Bernalillo.

_____

Before **BRISCOE**, **MATHESON**, and **BACHARACH**, Circuit Judges.

_____

**BRISCOE**, Circuit Judge.

_____

This is a § 1983 case that challenges the constitutionality of New Mexico's system of bail. Plaintiffs-Appellants Darlene Collins, the Bail Bond Association of New Mexico ("BBANM"), and five New Mexico state legislators (the "Legislator Plaintiffs") allege that New Mexico's system of bail violates the Excessive Bail Clause of the Eighth Amendment, as well as the procedural and substantive components of the Due Process Clause of the Fourteenth Amendment.[1] Plaintiffs further allege that the rules governing New Mexico's system of bail were promulgated by the New Mexico Supreme Court in violation of the New Mexico Constitution. Defendants-Appellees are the New Mexico Supreme Court and its justices; the Second Judicial District Court of New Mexico, its chief judge, and its

_____

[1] Plaintiffs have withdrawn their claim that New Mexico's system of bail violates the Fourth Amendment's prohibitions against unreasonable search and seizure. Aplt. Reply. Br. at 14.

court executive officer; and the Bernalillo County Metropolitan Court, its chief judge, and its court executive officer.[2]

Defendants moved to dismiss, arguing that Plaintiffs lack standing, Defendants are immune from suit, and Plaintiffs have failed to state a claim.  Defendants also moved for Rule 11 sanctions on the basis that Plaintiffs' attorneys filed suit without adequately researching the viability of Plaintiffs' claims.  Plaintiffs then moved for leave to amend their complaint to add a claim that Defendants' Rule 11 motion violated Plaintiffs' First Amendment rights.

The district court granted Defendants' motion to dismiss because it found that BBANM and the Legislator Plaintiffs lack standing, Defendants are immune from suit, and Plaintiffs failed to state a claim.  The district court also granted Defendants' motion for sanctions and denied Plaintiffs' motion to amend.  Plaintiffs timely appealed.[3]  Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

# I

## A.  Legal Background

As of 2014, when bail hearings were held in New Mexico, judges commonly set the amount of any secured bail bond based "solely on the nature of [a

---

[2] Plaintiffs have withdrawn their appeal from the dismissal of their claims against the Board of County Commissioners of the County of Bernalillo.  Aplt. Reply. Br. at 19 n.10.

[3] Appeal No. 17-2217 concerns the dismissal of Plaintiffs' case and denial of Plaintiffs' motion for leave to amend.  Appeal No. 18-2045 concerns the imposition of Rule 11 sanctions.  The appeals have been consolidated for procedural purposes. Dkt. No. 10546176.

defendant's] charged offense without regard to individual determinations of flight risk or continued danger to the community." *State v. Brown*, 338 P.3d 1276, 1292 (N.M. 2014). The New Mexico Supreme Court held that this practice was impermissible because "[n]either the [New Mexico] Constitution nor [New Mexico's] rules of criminal procedure permit[ted] a judge to base a pretrial release decision solely on the severity of the charged offense." *Id.* The Court explained that "[s]etting money bail based on the severity of the crime leads to either release or detention, determined by a defendant's wealth alone instead of being based on the factors relevant to a particular defendant's risk of nonappearance or reoffense in a particular case." *Id.*

In March 2016, the New Mexico legislature proposed amending the state constitution to change how the state administers bail. S.J. Res. 1, 52d Leg., 2d Sess. (N.M. 2016). The amendment was ratified by popular referendum in November 2016. The relevant provision now reads:

> All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great and in situations in which bail is specifically prohibited by this section. Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.

> Bail may be denied by a court of record pending trial for a defendant charged with a felony if the prosecuting authority requests a hearing and proves by clear and convincing evidence that no release conditions will reasonably protect the safety of any other person or the community. An appeal from an order denying bail shall be given preference over all other matters.

> A person who is not detainable on grounds of dangerousness nor a flight risk in the absence of bond and is otherwise eligible for

4

> bail shall not be detained solely because of financial inability to post
> a money or property bond.  A defendant who is neither a danger nor
> a flight risk and who has a financial inability to post a money or
> property bond may file a motion with the court requesting relief
> from the requirement to post bond.  The court shall rule on the
> motion in an expedited manner.

N.M. Const. art. II, § 13.

In July 2017, the Supreme Court of New Mexico revised the state's Rules of Criminal Procedure to implement the recent constitutional amendment (the "2017 Rules").  The relevant provisions state:

> Pending trial, any defendant eligible for pretrial release under
> Article II, Section 13 of the New Mexico Constitution, shall be
> ordered released pending trial on the defendant's personal
> recognizance or upon the execution of an unsecured appearance
> bond in an amount set by the court, unless the court makes written
> findings of particularized reasons why the release will not
> reasonably ensure the appearance of the defendant as required.  The
> court may impose non-monetary conditions of release . . . , but the
> court shall impose the least restrictive condition or combination of
> conditions that will reasonably ensure the appearance of the
> defendant as required and the safety of any other person or the
> community.

N.M. R. Crim. P. 5-401(B).

> If the court makes findings of the reasons why release on
> personal recognizance or unsecured appearance bond, in addition to
> any non-monetary conditions of release, will not reasonably ensure
> the appearance of the defendant as required, the court may require a
> secured bond for the defendant's release.

N.M. R. Crim. P. 5-401(E).

The 2017 Rules were meant to "clarify that the amount of [a] secured bond must not be based on a bond schedule, i.e., a predetermined schedule of monetary amounts fixed according to the nature of the charge."  N.M. R. Crim. P. 5-401 cmt.

5

(referring to N.M. R. Crim. P. 5-401(E)(1)(d)).  "Instead, [a] court must consider [each] individual defendant's financial resources and must set secured bond at the lowest amount that will reasonably ensure the defendant's appearance in court after the defendant is released."  *Id.* (referring to N.M. R. Crim. P. 5-401(E)(1)(a)–(c)).

Depending on a defendant's custodial status, a "district court shall conduct a hearing . . . and issue an order setting the conditions of release as soon as practicable, but in no event later than" three to five "days after the date of arrest."  N.M. R. Crim. P. 5-401(A)(1).  "The chief judge of [each] district court may [also] designate by written court order responsible persons to implement . . . pretrial release procedures . . . ."  N.M. R. Crim. P. 5-401(N).  Per these procedures, "[a] designee shall release a defendant from custody prior to the defendant's first appearance before a judge if the defendant," *id.*, (1) "has been arrested and detained for [most] . . . misdemeanor[s]" and other "[m]inor offenses," (2) "qualifies for pretrial release based on a risk assessment and a pretrial release schedule approved by the Supreme Court," or (3) "qualifies for pretrial release under a local release on recognizance program that relies on individualized assessments of arrestees and has been approved by order of the Supreme Court," N.M. R. Crim. P. 5-408(B)–(D).  When a defendant is released pursuant to Rule 5-408, he is "released on personal recognizance on [his] . . . promise to appear and subject to . . . standard conditions of release."  N.M. R. Crim. P. Form 9-302.

## B.  Factual Background

Two additional events underlie Plaintiffs' claims.  First, in late 2016, the
Second Judicial District Court of New Mexico and the Bernalillo County
Metropolitan Court—acting through their chief judges and court executive officers—
signed a memorandum of understanding with the Laura and John Arnold Foundation,
allowing the courts to use the Arnold Tool to perform risk assessments of criminal
defendants prior to their bail hearings.  App. Vol. I at 29, 65–72.  The Arnold Tool,
formally known as the Public Safety Assessment, "considers nine factors to measure
the risk an eligible defendant will fail to appear in court and the risk he or she will
engage in new criminal activity while on release." *Holland v. Rosen*, 895 F.3d 272,
281 (3d Cir. 2018); *see also* Laura and John Arnold Foundation, *Public Safety
Assessment - What is the PSA*, https://www.psapretrial.org/about/what-is-psa (last
visited February 4, 2019).  Plaintiffs allege that "[t]he use of the Arnold Tool
result[s] in persons accused of a crime being denied the opportunity to secure their
pre-trial release through a secured bond as the tool requires the court[,] thr[ough] an
entirely opaque program[,] to assess non-monetary conditions of release that infringe
upon a person's pretrial liberty."  App. Vol. I at 29.

Second, on Saturday, July 1, 2017—the first day when the 2017 Rules were in
effect—Plaintiff Darlene Collins was arrested for "aggravated assault arising out of a
domestic dispute," *id.* at 32, a fourth degree felony, N.M. Stat. § 30-3-2.  Plaintiffs
allege that, prior to the effective date of the 2017 Rules, "the jailhouse could have set
a reasonable, non-excessive, monetary bail to ensure . . . Collin's [sic] appearance at

arraignment and then for trial." App. Vol. I at 33. But the jailhouse "could not, under the new Supreme Court Rules[,] consider releasing . . . Collins subject to monetary bail," even though Collins's "family was prepared to use their own financial resources with the assistance of a member of . . . BBANM to pay the required amount for pre-arraignment release." *Id.* Instead, "Collins was incarcerated for almost 5 full days" before her arraignment in Bernalillo County Metropolitan Court on July 5, 2017. *Id.* at 33, 272–75. "[N]o conditions were [ultimately] imposed upon her release post-arraignment and pre-trial other than a verbal order from the Court that she was being released, but she was not allowed to return to her home."[4] *Id.* at 33.

## C.  Procedural Background

Plaintiffs Collins, BBANM,[5] and the Legislator Plaintiffs brought this case as a putative class action on behalf of all New Mexico criminal defendants whose bail hearings have been or will be conducted using the 2017 Rules or the Arnold Tool. *Id.* at 36. Plaintiffs allege that the 2017 Rules and the Arnold Tool violate the Excessive Bail Clause of the Eighth Amendment "by permitting judges to consider

---

[4] Plaintiffs' allegation that Collins was not allowed to return home is not fully supported by documents attached to their motion for a preliminary injunction. In a sworn declaration, Collins stated that she "was released on [her] own recognizance with *no* conditions . . . ." App. Vol. I at 122–23 (emphasis added). Moreover, the order setting Collins's conditions of release does not prohibit Collins from returning home. *Id.* at 274–75.

[5] BBANM "is a professional membership organization comprised of bail bond businesses licensed to do business and operating throughout New Mexico." App. Vol. I at 23.

secured bond only when it is determined that no other conditions of release will reasonably assure the eligible defendant's appearance in court when required." *Id.* at 42. According to Plaintiffs, this "subordinat[ion] [of] secured bond" "effectively takes secured bonds off the table as an option" for courts deciding whether to release a defendant pending trial. *Id.*

Plaintiffs further allege that "Defendants violate the procedural component of the Due Process Clause" of the Fourteenth Amendment "[b]y imposing liberty-restricting conditions on . . . Collins and other presumptively innocent criminal defendants without offering them the historically-required option of non-excessive monetary bail." *Id.* at 44. Plaintiffs also allege that "Defendants . . . violate Plaintiffs' substantive rights under the Due Process Clause [of the Fourteenth Amendment] because the option of non-excessive bail for a bailable offense is fundamental to our scheme of ordered liberty and deeply rooted in this Nation's history and tradition." *Id.* (quotation marks and emphasis omitted). Finally, Plaintiffs allege that the New Mexico Supreme Court exceeded its authority, under the New Mexico Constitution, when promulgating the 2017 Rules.[6] *Id.* at 34–35.

Plaintiffs seek damages, a declaration that the 2017 Rules and use of the Arnold Tool are unconstitutional, and an injunction against future use of the 2017 Rules and the Arnold Tool. *Id.* at 47–48. Plaintiffs sued the New Mexico Supreme

---

[6] Plaintiffs' allegation that the New Mexico Supreme Court violated the New Mexico Constitution when it promulgated the 2017 Rules is not enumerated as a claim in the complaint. *See* App. Vol. I at 34–35. Nevertheless, the parties and the district court treated it as a claim.

Court, the Second Judicial District Court, and the Bernalillo County Metropolitan Court for declaratory and injunctive relief. *Id.* at 24–26. Plaintiffs also sued the justices of the New Mexico Supreme Court, as well as the chief judges and court executive officers of the Second Judicial District Court of New Mexico and the Bernalillo County Metropolitan Court. *Id.* Plaintiffs sued these defendants in their individual capacities for damages and in their official capacities for declaratory and injunctive relief. *Id.*

Defendants moved to dismiss, arguing that Plaintiffs lack standing; sovereign immunity bars Plaintiffs' claims against the courts themselves and the state officials in their official capacities; legislative immunity bars Plaintiffs' claims against the supreme court justices; judicial immunity bars Plaintiffs' claims against the state court judges and court executive officers; and Plaintiffs have failed to state a claim. *Id.* 171–99. While their motion to dismiss was pending, Defendants moved for Rule 11 sanctions. App. Vol. II at 445–58. Defendants argued that they were entitled to sanctions because Plaintiffs' counsel pursued unwarranted claims without offering a reasonable argument to modify existing law on standing or immunity. After being served with Defendants' motion for sanctions, Plaintiffs moved to amend their complaint to add a claim for "violations of the First Amendment [from the] vindictive prosecution undertaken by" Defendants. *Id.* at 362. Plaintiffs argued that "Defendants undertook to threaten and intimidate Plaintiffs into abandoning their Free Speech and their right of access to the Courts through the service of a

defamatory Rule 11 [m]otion directed personally at Plaintiffs' counsel." *Id.* at 361–62.

The district court granted the motion to dismiss after finding that BBANM and the Legislator Plaintiffs lacked standing; that Plaintiffs' claims against the state courts and individual defendants, in their official capacities, are barred by sovereign immunity; that Plaintiffs' claims against the state court judges and court executives, in their individual capacities, are barred by judicial immunity; that Plaintiffs' claims against the state supreme court justices, in their individual capacities, are barred by legislative immunity; and that Plaintiffs failed to state a claim. The district court granted the motion for sanctions because it found that there was no objectively reasonable basis for Plaintiffs to think that BBANM or the Legislator Plaintiffs had standing, or that Plaintiffs could overcome Defendants' immunities. The district court also found that BBANM and the Legislator Plaintiffs were named as plaintiffs for an improper purpose. Finally, the district court denied the motion to amend as futile. Plaintiffs timely appealed all three rulings.

## II

We review de novo whether Plaintiffs have standing. *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013). "Each plaintiff must have standing to seek each form of relief in each claim." *Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*, 859 F.3d 1243, 1250 (10th Cir. 2017) (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007)).

"[S]tanding 'is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *S. Utah Wilderness All.*, 707 F.3d at 1153 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

> To satisfy Article III's standing requirements, a plaintiff must show: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

## A. BBANM

Plaintiffs argue that BBANM has standing because it (1) "has associational standing," Aplt. Br. at 30, and (2) "has third-party standing to assert the constitutional rights of potential customers [who will be] denied bail," *id.* at 32.[7]  In

---

[7] Plaintiffs further allege that BBANM's member companies "have been severely [financially] harmed by the drastic reduction in the number of defendants given the option of jailhouse bonds or secured bonds." App. Vol. I at 32. This echoes Plaintiffs' argument in district court that the 2017 Rules deprive BBANM's members of a "constitutionally protected property interest in engaging in one's chosen profession." App. Vol. II at 302. But Plaintiffs do not allege a deprivation of a protected property interest in their First Amended Complaint. Plaintiffs only allege violations of criminal defendants' rights under the Fourth, Eighth, and Fourteenth Amendments. App. Vol. I at 40–47. Therefore, even assuming that BBANM can satisfy Article III's standing requirements based on its members' economic injury, we must still examine whether BBANM has standing to assert the constitutional rights of criminal defendants. *Kowalski v. Tesmer*, 543 U.S. 125, 128–29 & n.2 (2004).

(continued . . .)

reality, whether BBANM has standing is only a question of third-party standing. "An association has . . . standing" "to raise [the] claims of [its] members" "only if: '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Chamber of Commerce v. Edmonson*, 594 F.3d 742, 756 (10th Cir. 2010) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). We need only consider the first prong of associational standing. Because BBANM's members are not criminal defendants, they do not possess the Eighth and Fourteenth Amendment rights asserted in Plaintiffs' complaint. Therefore, like BBANM itself, BBANM's members only have standing if they can assert the constitutional rights of criminal defendants.

"Ordinarily, a party 'must assert his own legal rights' and 'cannot rest his claim to relief on the legal rights . . . of third parties.'" *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). "But we recognize an exception where . . . 'the party asserting the right has a close relationship with the person who possesses the right and there is a hindrance to the possessor's ability to protect his own interests.'" *Id.* (alteration omitted) (quoting

---

(cont'd)
     BBANM does not argue that it has standing to assert the claim that the 2017 Rules "infringe[] upon the power of the [New Mexico] Legislature to make law." App. Vol. I at 35.

*Kowalski*, 543 U.S. at 130).  Neither BBANM nor its members are eligible for this exception to the rule against third-party standing.

In *Kowalski*, two attorneys challenged a state statute that generally prohibited the "appointment of appellate counsel for indigents who plead guilty."  543 U.S. at 128.  The plaintiffs alleged that the "statute denied indigents their federal constitutional rights to due process and equal protection."  *Id.*  The Supreme Court held that "the attorneys [did] not have third-party standing to assert the rights of . . . indigent defendants denied appellate counsel."  *Id.* at 134.  First, the Court reasoned that, because the attorneys sought to assert the rights of "as yet unascertained . . . criminal defendants" whose rights would be violated, "[t]he attorneys . . . [did] not have a close relationship with their alleged clients; indeed, they [had] no relationship at all."  *Id.* at 130–31 (quotation marks omitted).  Next, the Court explained "that the lack of an attorney . . . is [not] the type of hindrance necessary to allow another to assert the indigent defendants' rights."  *Id.* at 132.  Proceeding pro se, the indigent defendants could assert their constitutional rights on direct appeal and in collateral proceedings.  *Id.* at 131–32.

Like the attorneys in *Kowalski*, BBANM and its members lack third-party standing.  First, BBANM and its members have "no relationship at all," *id.* at 131, with "potential customers denied bail under" the 2017 Rules and the Arnold Tool, Aplt. Br. at 32.  Second, criminal defendants in New Mexico are not hindered in asserting their own constitutional rights in their own criminal proceedings or in a § 1983 suit, as Collins has done here.  Plaintiffs argue that criminal defendants are

14

hindered in asserting their own rights because they need "a third-party willing to expend funds to challenge the constitutionality of the" 2017 Rules, especially because criminal defendants subject to pretrial conditions of release "need to prepare for their criminal trial[s]." Aplt. Br. at 33–34. But the criminal defendants in *Kowalski* were not hindered in asserting their constitutional rights even though they were proceeding pro se and needed to prepare for their criminal appeals, likely while in custody. 543 U.S. at 131–32.

## B. The Legislator Plaintiffs

"[A] threshold question in the legislator standing inquiry is whether the legislator-plaintiffs assert an institutional injury." *Kerr v. Hickenlooper* (*Kerr II*), 824 F.3d 1207, 1214 (10th Cir. 2016). "[I]ndividual legislators may not support standing by alleging only an institutional injury." *Id.* "[A]n institutional injury constitutes some injury to the power of the legislature as a whole rather than harm to an individual legislator." *Id.* "[I]nstitutional injuries . . . do not 'zero in on any individual'" legislator and are "'widely dispersed' and 'necessarily impact all members of a legislature equally.'" *Id.* (alterations omitted) (quoting *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2664 (2015)).

Plaintiffs suggest that the Legislator Plaintiffs have standing to challenge the 2017 Rules because the rules represent "an unconstitutional usurpation of

[legislative] power by" the New Mexico Supreme Court.[8]  Aplt. Br. at 36.  In our view, it is difficult to conceive of a better example of an institutional injury.  The injury alleged by Plaintiffs "is based on [a] loss of legislative power that necessarily impacts all members of the [New Mexico Legislature] equally."  *Kerr II*, 824 F.3d at 1215.  Therefore, the Legislator Plaintiffs lack standing.  *Id.* at 1217.

In an attempt to evade our holding in *Kerr II*, Plaintiffs contend that their situation is "*sui generis*" because the Legislator Plaintiffs' claim involves a "separation-of-powers component."  Aplt. Reply Br. at 22–23.  Notwithstanding that Plaintiffs waive this argument by first raising it in their Reply Brief, *In re Motor Fuel Temperature Sales Practices Litigation*, 872 F.3d 1094, 1105 n.2 (10th Cir. 2017), a "case [that] presents separation of powers concerns" merits a rigorous standing inquiry, *Kerr II*, 824 F.3d at 1215 (citing *Ariz. State Legislature*, 135 S. Ct. at 2665 n.12).  Rather than advance their standing argument, Plaintiffs have highlighted a facet of their case that weighs against concluding that the Legislator Plaintiffs have standing.

## C.  Darlene Collins

Defendants do not challenge Collins's standing on appeal, though they did unsuccessfully raise the issue before the district court in their motion to dismiss.  We can raise issues of standing and mootness *sua sponte* because we "have an independent obligation to determine whether subject-matter jurisdiction exists, even

---

[8] The Legislator Plaintiffs do not argue that they have standing to assert the Eighth and Fourteenth Amendment rights of criminal defendants.

in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  "Plaintiffs have the burden to demonstrate standing for each form of relief sought." *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006).  This burden exists "at all times throughout the litigation," *id.*, though our terminology changes depending on the stage of litigation.  "[M]ootness '[is] the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Brown v. Buhman*, 822 F.3d 1151, 1164 (10th Cir. 2016) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)).

Collins seeks damages, as well as declaratory and injunctive relief.  App. Vol. I at 47–48.  When Collins filed suit, she had standing to seek damages for the alleged deprivation of her constitutional rights.[9]  *See Faustin v. City, Cty. of Denver*, 268 F.3d 942, 948 (10th Cir. 2001).  Her claim for damages is not moot; a damages award would still compensate Collins for her alleged injury.  *Lippoldt*, 468 F.3d at 1216–17. The same is true insofar as Collins seeks a retrospective declaratory judgment that her constitutional rights were violated in July 2017.  *Id.* at 1217.

But Collins also seeks prospective relief, in the form of a declaratory judgment and a permanent injunction.  App. Vol. I at 47–48.  Assuming that Collins had standing to seek prospective relief when she filed suit, Collins's claims for

---

[9] Collins does not have standing to pursue the claim that the 2017 Rules "infringe[] upon the power of the [New Mexico] Legislature to make law," App. Vol. I at 35.  Collins cannot assert the state legislature's legislative power.  *Sessions*, 137 S. Ct. at 1689.

17

prospective relief are now moot because she is no longer subject to pretrial supervision. *Lippoldt*, 468 F.3d at 1217–19; Oral Argument at 5:35–5:45 (representation by Plaintiffs' counsel that New Mexico is not pursuing criminal charges against Collins).

Moreover, a plaintiff cannot sustain a claim for prospective injunctive relief that is based on "speculative future harm." *Lippoldt*, 468 F.3d at 1218. Plaintiffs have never suggested that Collins faces an appreciable risk of future arrest and subsequent arraignment using the 2017 Rules and the Arnold Tool. "[T]o establish an actual controversy . . . , [Collins] would [need] . . . to allege that [she will] . . . have another encounter with the police." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105–06 (1983); *see also O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ("We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners."). "Absent a sufficient likelihood that [she] will again be wronged in a similar way, [Collins] is no more entitled to an injunction than any other citizen of [New Mexico]; and a federal court may not entertain a claim by any or all citizens who no more than assert that [a state's laws] . . . are unconstitutional." *Lyons*, 461 U.S. at 111.

In summary, BBANM and the Legislator Plaintiffs lack standing to assert the claims raised in this case; Collins has standing to seek damages and retrospective declaratory relief based on the alleged violation of her Eighth and Fourteenth Amendment rights; but Collins's claims for prospective declaratory and injunctive

relief are moot.  Therefore, we turn to the question of whether Defendants are
immune to Collins's claims for damages and retrospective declaratory relief.

### III

We review de novo whether Defendants are immune from suit.  *Muscogee
(Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010)
(sovereign immunity); *Lundahl v. Zimmer*, 296 F.3d 936, 938 (10th Cir. 2002)
(judicial immunity); *Kamplain v. Curry Cty. Bd. of Comm'rs*, 159 F.3d 1248, 1250
(10th Cir. 1998) (legislative immunity).  "The proponent of a claim to absolute
immunity bears the burden of establishing the justification for such immunity."
*Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 (1993).  Three immunity
doctrines are at issue in this case—sovereign immunity, judicial immunity, and
legislative immunity.  We address each in turn.

### A.  Sovereign Immunity

Per the Eleventh Amendment, "[s]tates may not be sued in federal court unless
they consent to it in unequivocal terms or unless Congress, pursuant to a valid
exercise of power, unequivocally expresses its intent to abrogate the immunity."
*Muscogee (Creek) Nation*, 611 F.3d at 1227 (quoting *Green v. Mansour*, 474 U.S. 64,
68 (1985)).  "This prohibition encompasses suits against state agencies[ and] [s]uits
against state officials acting in their official capacities."  *Id.* (citations omitted).  But,
"[u]nder *Ex parte Young*[, 209 U.S. 123 (1908)], a plaintiff may avoid the Eleventh
Amendment's prohibition on suits against states in federal court by seeking to enjoin
a state official from enforcing an unconstitutional statute."  *Cressman v. Thompson*,

719 F.3d 1139, 1146 n.8 (10th Cir. 2013) (quotation marks omitted).  Collins has

sued three New Mexico courts and various state officials in their official capacities to

obtain declaratory and injunctive relief.  New Mexico has not consented to this suit

and Congress has not abrogated New Mexico's immunity from Plaintiffs' § 1983

claims.  *Muscogee (Creek) Nation*, 611 F.3d at 1227.  Therefore, we must decide

whether the New Mexico courts named as defendants are entitled to sovereign

immunity and whether *Ex parte Young* allows Collins to proceed against the state

officials in their official capacities.  Plaintiffs' discussion of sovereign immunity is

limited to a single sentence in their Opening Brief.  *See* Aplt. Br. at 48.  Plaintiffs'

"conclusory assertion[] . . . do[es] not adequately present us with an argument . . . ,

so we [could] consider [the point] abandoned."  *Stender v. Archstone-Smith*

*Operating Tr.*, 910 F.3d 1107, 1117 (10th Cir. 2018).  We briefly address sovereign

immunity to more clearly explain our disposition of Collins's claims.

   "As a general matter, state courts are considered arms of the state" and are

entitled to sovereign immunity.  13 Charles Alan Wright & Arthur R. Miller, *Federal*

*Practice & Procedure* § 3524.2 (3d ed. 2018).  The general rule holds true in this

case.  The New Mexico Supreme Court, the Second Judicial District Court, and the

Bernalillo County Metropolitan Court are state agencies.  N.M. Const. art. VI, § 1

("The judicial power of the state shall be vested in . . . a supreme court, a court of

appeals, district courts; . . . and such other courts inferior to the district courts as may

be established by law from time to time in any district, county or municipality of the

state."); N.M. Stat. § 34-6-21 ("The district courts are agencies of the judicial

department of the state government."); N.M. Stat. § 34-8a-8 ("The metropolitan court

is an agency of the judicial department of state government.").  Therefore, sovereign

immunity bars Collins's claims against the New Mexico Supreme Court, the Second

Judicial District Court, and the Bernalillo County Metropolitan Court.

Collins's claims against the state officials in their official capacities also fail.

Collins cannot proceed under *Ex parte Young* because she only has standing to seek

retrospective declaratory relief.[10]  *Ex parte Young* "may not be used to obtain a

declaration that a state officer has violated a plaintiff's federal rights in the past."

*Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citing

*Puerto Rico Aqueduct v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

Therefore, sovereign immunity also bars Collins's claims against the individual

defendants in their official capacities.

## B.  Judicial Immunity

"Like other forms of official immunity, judicial immunity is an immunity from

suit, not just from ultimate assessment of damages."  *Mireles v. Waco*, 502 U.S. 9, 11

---

[10] The district court, when analyzing Collins's demand for prospective declaratory and injunctive relief, found that Collins could not proceed under *Ex parte Young*.  App. Vol. III at 667–68.  The district court reasoned that *Ex parte Young* was inapplicable because "Plaintiffs fail[ed] to state a claim for an ongoing violation of federal law."  *Id.* at 668.  "But the inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim."  *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646 (2002).  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Id.* at 645 (alterations and quotation marks omitted).  Collins does not raise this error in the district court's reasoning.

(1991) (per curiam) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  The

"immunity applies only to personal capacity claims."  *Crowe & Dunlevy, P.C. v.*

*Stidham*, 640 F.3d 1140, 1156 (10th Cir. 2011).  At issue here is whether the chief

judges and court executive officers of the Second Judicial District Court and the

Bernalillo County Metropolitan Court are immune from Collins's claims for

damages.

     In two sentences of their complaint, Plaintiffs allege that the Second Judicial

District Court and the Bernalillo County Metropolitan Court "adopted and

implemented the" Arnold Tool.[11]  App. Vol. I at 20; *see also id.* at 29.  In the district

court, Plaintiffs argued that these were "administrative," not judicial, acts.  App. Vol.

II at 298.  The district court found that judicial immunity barred Plaintiffs' claims

against the chief judges and court executive officers, in their individual capacities,

because Plaintiffs' claims targeted the judicial act of "implement[ing] [] the 2017

Rules."  App. Vol. III at 670.  In their briefing on appeal, Plaintiffs never discuss

how the district court erred when analyzing judicial immunity.  In a single clause

---

[11] Chief Judge Nash, Chief Judge Alaniz, Court Executive Officer Noel, and Court Executive Officer Padilla are only mentioned in the caption of the complaint and in the list of parties.  App. Vol. I at 17, 25–26.  Their names also appear in an attachment to the complaint.  *Id.* at 66, 71.  "[I]n a § 1983 action it is 'particularly important' that '[a] complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.'"  *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (quoting *Kansas Penn Gambling, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2015)).  Here, Collins's allegations are so sparse that it is difficult to identify the factual basis for her claims against the state court judges and court executive officers.

from the section of their Opening Brief discussing Rule 11 sanctions, Plaintiffs

passingly characterize adoption of the Arnold Tool as a "ministerial decision[]."

Aplt. Br. at 46.  Plaintiffs have abandoned their argument regarding judicial

immunity by failing to address the district court's analysis or cite authority for their

position.  *Stender*, 910 F.3d at 1117; *see also, e.g.*, *Benham v. Ozark Materials River*

*Rock, LLC*, 885 F.3d 1267, 1276 (10th Cir. 2018) (concluding that appellant waived

argument "by inadequately briefing the issue").  "[T]he court cannot take on the

responsibility of serving as the litigant's attorney in constructing arguments and

searching the record."  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840

(10th Cir. 2005) (describing limits of our role when litigants proceed pro se;

Plaintiffs are represented by counsel).

## C.  Legislative Immunity

"Absolute legislative immunity attaches to all actions taken 'in the sphere of

legitimate legislative activity.'"  *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)

(quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).  "Whether an act is

legislative turns on the nature of the act, rather than on the motive or intent of the

official performing it."  *Id.*  A state "[c]ourt and its members are immune from suit

when acting in their legislative capacity," such as by promulgating "rules of general

application [that] are statutory in character."  *Supreme Court of Va. v. Consumers*

*Union of the U.S., Inc.*, 446 U.S. 719, 731–34 (1980).  Plaintiffs do not dispute that

New Mexico's Rules of Criminal Procedure are "rules of general application."[12] *Id.* at 731. Therefore, the justices of the Supreme Court of New Mexico "act[ed] in their legislative capacity" when they amended the state's rules of criminal procedure in 2017. *Id.* at 734.

Instead, Plaintiffs focus on whether the 2017 Rules are the result of "legitimate" legislative activity. They argue that the New Mexico legislature retains legislative power over criminal defendants' substantive right to bail, such that the New Mexico Supreme Court exceeded its legislative power when promulgating the 2017 Rules. Aplt. Br. at 18–20, 49–51; Aplt. Reply Br. at 14–19. "To find that [an action] has exceeded the bounds of legislative power it must be obvious that there was a usurpation of functions exclusively vested in" another branch of government. *Tenney*, 341 U.S. at 378. That is not the case here. The New Mexico legislature has given the New Mexico Supreme Court the power to promulgate rules of criminal procedure.

> The supreme court of New Mexico shall, by rules promulgated by it from time to time, regulate pleading, practice and procedure in judicial proceedings in all courts of New Mexico for the purpose of

---

[12] Plaintiffs repeatedly suggest that promulgating the 2017 Rules was an enforcement action, such that legislative immunity would not apply. Aplt. Br. at 46, 50. Plaintiffs cite *Consumers Union* for the proposition that legislative immunity does not bar a suit for declaratory and injunctive relief against a state supreme court and its justices when the defendants exercised their own "authority . . . to initiate [disciplinary] proceedings against attorneys." 446 U.S. at 736. This analysis does not apply here because Plaintiffs have not sued the justices of the New Mexico Supreme Court for enforcing the 2017 Rules. *See* App. Vol. I at 19–20. As explained in *Consumers Union*, legislative immunity applies when a case arises from a court's promulgation of generally applicable rules. 446 U.S. at 731–34.

> simplifying and promoting the speedy determination of litigation upon its merits. Such rules shall not abridge, enlarge or modify the substantive rights of any litigant.

N.M. Stat. § 38-1-1. The delegated authority is not unlimited, but Plaintiffs have not pointed to anything suggesting that the New Mexico legislature exercises exclusive legislative authority over bail.[13] Therefore, it is not "obvious" that the New Mexico Supreme Court justices have exceeded the legislative authority vested in them by N.M. Stat. § 38-1-1, which means that the justices are entitled to legislative immunity for claims arising from their promulgation of the 2017 Rules. *Tenney*, 341 U.S. at 378–79; *see also Sable v. Myers*, 563 F.3d 1120, 1126 (10th Cir. 2009) (refusing to "adopt a very restrictive view of what is legitimate legislative activity" (quotation marks omitted)).

In summary, sovereign immunity bars Collins's claims against the state courts and state officials in their official capacities; Plaintiffs have abandoned their argument regarding judicial immunity, which disposes of Collins's claims against the state court chief judges and court executive officers in their individual capacities; and legislative immunity bars Collin's claims against the supreme court justices in their individual capacities.

---

[13] We have identified two statutes that substantively discuss bail. Both envision a necessary role for the New Mexico Supreme Court, further demonstrating that the Court has legislative authority over the procedural aspects of bail. *See* N.M. Stat. § 31-3-1 ("Any statutory provision or rule of court governing the release of an accused may be carried out by a responsible person designated by the court."); N.M. Stat. § 31-3-5 ("No bond shall be accepted from a paid surety . . . by a . . . district court unless executed on a form which has been approved by the supreme court.").

"Absolute immunity [undoubtedly] has its costs" for plaintiffs like Collins who seek to vindicate their constitutional rights. *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990). "The rationale for according absolute immunity in the civil rights context is to incorporate traditional common law immunities and to allow functionaries in the judicial system the latitude to perform their tasks absent the threat of retaliatory § 1983 litigation." *Id.* at 686–87 (footnote omitted). "Though such suits might be satisfying personally for a plaintiff, they could jeopardize the judicial system's ability to function." *Id.* at 687. "[S]uits against judges [are not] the only available means through which litigants can protect themselves from the consequences of judicial error." *Forrester*, 484 U.S. at 227. Collins could have raised the alleged error in her criminal proceedings. *See id.* Collins could have also named defendants who caused her pretrial detention and supervision but are not members of the state judiciary. *See, e.g.*, *Holland v. Rosen*, 277 F. Supp. 3d 707, 723 (D.N.J. 2017), *aff'd* 895 F.3d 272 (3d Cir. 2018) (naming as a defendant the person who "enforce[ed] the pretrial release conditions").

To bring it all together, Collins is the only Plaintiff with standing, but Defendants are immune to her claims, so we do not address the merits of Collins's claims that the 2017 Rules and the Arnold Tool violate the Eighth and Fourteenth Amendments.[14] Rather, we turn to the issue of sanctions.

---

[14] As explained throughout this Opinion, no Plaintiff has standing to pursue the claim that the New Mexico supreme court justices violated the New Mexico

(continued . . .)

## IV

Before discussing the district court's imposition of Rule 11 sanctions, we briefly address appellate jurisdiction.  We ordered briefing on the question of whether there is a final appealable order because the sanctions order contemplates a "future final award" of attorney's fees and does not define the amount of interest applicable to the sanctions award.  Dkt. No. 10550099 at 3–4.  "[I]n considering whether a judgment is 'final' under § 1291, the 'label used to describe the judicial demand is not controlling,' meaning we 'analyze the substance of the district court's decision, not its label or form.'"  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Albright v. UNUM Life Ins. Co.*, 59 F.3d 1089, 1092 (10th Cir. 1995)).

"[A] sanction order against an attorney currently of record is not a final decision for purposes of a § 1291 appeal where the underlying controversy remains unresolved."  *Howard v. Mail-Well Envelope Co.*, 90 F.3d 433, 435 (10th Cir. 1996).  Even once the merits of a case have been resolved, "an appeal from the award of sanctions may not be taken until the amount has been determined."  *Turnbull v. Wilcken*, 893 F.2d 256, 258 (10th Cir. 1990) (per curiam) (citing *Phelps v. Washburn Univ. of Topeka*, 807 F.2d 153, 154 (10th Cir. 1986)).  Here, the district court's order imposing Rule 11 sanctions is a final appealable order because the substance of the

---

(cont'd)
Constitution by promulgating the 2017 Rules.  Therefore, we need not discuss that claim further.

case has been resolved and the parties have stipulated that the sanction is $14,868.00.

App. Vol. III at 636–77, 678–79, 732–33.  The funds have been deposited in the

registry of the district court, where they are earning interest.  *Id.* at 732–33.

Turning to the substance of the issue, "[w]e review for an abuse of discretion

the district court's . . . imposition of Rule 11 sanctions."  *King v. Fleming*, 899 F.3d

1140, 1147 (10th Cir. 2018).  "Under this standard, we will reverse a district court

only 'if it based its ruling on an erroneous view of the law or on a clearly erroneous

assessment of the evidence.'"  *Id.* (quoting *Cooter & Gell v. Hartmarx Corp.*, 496

U.S. 384, 405 (1990)).  "[T]he award of Rule 11 sanctions involves two steps.  The

district court first must find that a pleading violates Rule 11."  *Adamson v. Bowen*,

855 F.2d 668, 672 (10th Cir. 1988).  "The second step is for the district court to

impose an appropriate sanction."  *Id.*

Rule 11 states:

> By presenting to the court a pleading, written motion, or other
> paper—whether by signing, filing, submitting, or later advocating
> it—an attorney . . . certifies that to the best of the person's
> knowledge, information, and belief, formed after an inquiry
> reasonable under the circumstances: (1) it is not being presented for
> any improper purpose, such as to harass, cause unnecessary delay, or
> needlessly increase the cost of litigation; [and] (2) the claims,
> defenses, and other legal contentions are warranted by existing law
> or by a nonfrivolous argument for extending, modifying, or
> reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b).  Rule 11 "imposes . . . an affirmative duty to conduct a reasonable

inquiry into the facts and the law before filing."  *Bus. Guides, Inc. v. Chromatic*

*Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991).  We "evaluate [an attorney's] conduct

under a standard of 'objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document.'" *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015) (quoting *Adamson*, 855 F.2d at 673). "Because our adversary system expects lawyers to zealously represent their clients, [the Rule 11] standard is a tough one to satisfy; an attorney can be rather aggressive and still be reasonable." *Id.*

When, as here, a pleading contains allegations that are not warranted by existing law, we examine whether they are "warranted 'by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *Id.* (quoting Fed. R. Civ. P. 11(b)). Again, we employ an objective standard "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. But, when we analyze the frivolity of an attorney's arguments, "it is not sufficient for an offending attorney to allege that a competent attorney could have made a colorable claim based on the facts and law at issue; the offending attorney must actually present a colorable claim." *White v. Gen. Motors Corp.*, 908 F.2d 675, 680 (10th Cir. 1990) "[P]laintiffs may not shield their own incompetence by arguing that, while they failed to make a colorable argument, a competent attorney would have done so." *Id.*

After holding a hearing, the district court granted the motion for sanctions because (1) the Legislator Plaintiffs and BBANM "ha[d] no objectively reasonable basis for asserting standing to sue" and (2) "Plaintiffs' claims for money damages against . . . Defendants are frivolous because . . . Defendants are protected by well-

29

established immunity doctrines."[15]  App. Vol. III at 687–90.  The district court also found that "Plaintiffs' counsel added the [L]egislator Plaintiffs and [BBANM] as parties to this case for [an] improper purpose—namely, for political reasons to express their opposition to lawful bail reforms in the State of New Mexico rather than to advance colorable claims for judicial relief."  *Id.* at 687.  The district court ordered A. Blair Dunn, one of Plaintiffs' attorneys, to pay the attorney's fees and costs incurred by Defendants because of the Rule 11 violation; the sanction amounted to $14,868.00.  *Id.* at 692, 732–34.

The district court followed the correct two-step process for imposing a Rule 11 sanction.  *Adamson*, 855 F.2d at 672.  As we explain below, the district court's analysis of the evidence was not clearly erroneous.  Therefore, the district court did not abuse its discretion when it granted Defendants' motion for Rule 11 sanctions.[16] *Roth v. Green*, 466 F.3d 1179, 1188–90 (10th Cir. 2006) (holding that district court

---

[15] Plaintiffs argue that the Rule 11 hearing was deficient because Plaintiffs should have been allowed to produce evidence.  Aplt. Br. at 54.  The hearing was not deficient.  "Although a party must receive notice and an opportunity to respond before being sanctioned under Rule 11, '[t]he opportunity to fully brief the issue is sufficient to satisfy due process requirements.'"  *Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1160 (10th Cir. 1991) (internal citations omitted) (quoting *White*, 908 F.2d at 686).

[16] Plaintiffs argue that sanctions were inappropriate because Collins's constitutional claims were not frivolous.  Aplt. Br. at 44.  But the relative quality of Collins's constitutional claims is not dispositive because "a pleading containing both frivolous and nonfrivolous claims may violate Rule 11."  *Dodd Ins. Servs.*, 935 F.2d at 1158.  This is not a case in which "a single frivolous or groundless claim" was "easily disposed of by the opposing part[ies]."  *Id.*  Rather, Plaintiffs' arguments regarding standing and immunity materially increased the complexity of the case by involving improper parties.

did not abuse its discretion when finding that plaintiffs' attorney violated Rule 11 because there were "a host of legal impediments to [plaintiffs] prevailing on their claims," including that "the majority of the defendants had, at best, only tangential relationships to" plaintiffs' claims and plaintiffs' counsel ignored controlling precedent).

Plaintiffs' standing arguments ignored controlling precedent. Under *Kowalski*, 543 U.S. at 131–34, BBANM and its members lack standing to assert the constitutional rights of criminal defendants. Under *Kerr II*, 824 F.3d at 1214–17, the Legislator Plaintiffs lack standing to assert an institutional injury. When Plaintiffs were confronted with these binding authorities in Defendants' motion to dismiss and motion for Rule 11 sanctions, Plaintiffs unreasonably attempted to distinguish themselves from the plaintiffs in *Kowalski* and *Kerr II*. App. Vol. II at 300–11, 551.

For example, without acknowledging that pro se criminal defendants in *Kowalski* were able to assert their own constitutional rights, Plaintiffs argued that criminal defendants in New Mexico cannot assert their own constitutional rights because they lack "funds to . . . retain counsel." *Id.* at 307. Plaintiffs then asserted that BBANM and its members have a close relationship with every criminal defendant arrested in New Mexico since July 2017 because these defendants "already exist," notwithstanding that the Supreme Court reached the opposite conclusion in *Kowalski* under a materially similar set of facts. *Id.* at 308. When attempting to evade *Kerr II*, Plaintiffs paradoxically claimed that the alleged loss of "the right of the legislature to pass laws" was not "an institutional injury." *Id.* at 310.

31

Plaintiffs' arguments regarding immunity suffer from similar infirmities.[17]

Most glaringly, Plaintiffs maintained that "any argument regarding sovereign

immunity . . . [was] just not applicable" in this case because "Congress waived . . .

sovereign immunity for individual state actors [by enacting] . . . § 1983." App. Vol.

II at 547.  This statement is inaccurate.  *Will v. Mich. Dep't of State Police*, 491 U.S.

58, 63–71 (1989).  It also offers no explanation why Plaintiffs thought the New

Mexico Supreme Court, the Second Judicial District Court, and the Bernalillo County

Metropolitan Court were proper defendants.[18]  Plaintiffs' arguments regarding

judicial and legislative immunity fare little better.

As discussed previously, Plaintiffs abandoned their arguments about judicial

immunity by failing to adequately brief them on appeal.  *Stender*, 910 F.3d at 1117.

Accordingly, Plaintiffs have not shown how the district court abused its discretion

when finding that Plaintiffs' arguments regarding judicial immunity were not

supported by existing law.

---

[17] Plaintiffs argue that "[j]udicial immunity principles are a developing area of
the law, warranting litigation and clarification." Aplt. Br. at 45.  The district court
found that "Plaintiffs [did] not make any argument for extending, modifying, or
reversing existing law or for establishing new law" on judicial immunity.  App. Vol.
III at 690 (quotation marks omitted).  Plaintiffs do not challenge this finding, which
forecloses their attempt to now argue for "clarification."  *White*, 908 F.2d at 680.

[18] If Collins had standing to seek prospective relief, her claims for prospective
declaratory and injunctive relief could have proceeded, under *Ex parte Young*, against
the state officials in their official capacities.  *Verizon*, 535 U.S. at 645–46.  But,
Plaintiffs have never raised *Ex parte Young* themselves, choosing instead to deny that
sovereign immunity is even applicable.  Therefore, the fact that Plaintiffs might have
relied on *Ex parte Young* when discussing sovereign immunity does not weigh
against the district court's imposition of sanctions.  *White*, 908 F.2d at 680.

Plaintiffs then argued that legislative immunity was unavailable to New Mexico's supreme court justices because the New Mexico legislature "has never delegated exclusive legislative authority to the New Mexico Supreme Court." App. Vol. II at 549. But the New Mexico legislature *has* empowered the New Mexico Supreme Court to promulgate rules of criminal procedure. N.M. Stat. § 38-1-1. When exercising that delegated legislative authority to promulgate generally applicable rules, the court and its justices are entitled to legislative immunity. *Consumers Union*, 446 U.S. at 731–34.

We now turn to the district court's finding that Plaintiffs included BBANM and the Legislator Plaintiffs for an improper purpose—to express political opposition to the 2017 Rules. Plaintiffs argue that "improper motivation does not warrant sanction when there is [an] objective basis for filing suit." Aplt. Br. at 58–59; *see also Burkhart ex rel. Meeks v. Kinsley Bank*, 852 F.2d 512, 515 (10th Cir. 1988) (reasoning that an attorney who filed a harassing complaint could not be sanctioned under Rule 11 if the complaint's allegations were legally and factually warranted). But, as just discussed, there was no reasonable basis for including BBANM and the Legislator Plaintiffs in this case. Therefore, this is not a situation in which the district court awarded sanctions based on a finding of improper purpose even though there was an objective basis for filing suit. The district court could have concluded that Rule 11 sanctions were warranted without relying on any potential political purpose behind the suit, and we affirm on that basis.

Plaintiffs also argue that evidence of Dunn's letter to the New Mexico legislature about this lawsuit cannot support the district court's finding of political motivation because Dunn's letter is protected by the First Amendment.  Aplt. Br. at 55; Aplt. Reply Br. at 25–26.  The district court did not sanction Dunn for his letter to the state legislature.  App. Vol. III at 687–88 ("While Plaintiffs' counsel is entitled to express opinions regarding bail reform in New Mexico, Plaintiffs are not entitled to file claims in a federal court without standing solely to achieve political objectives.").  For the district court, Dunn's letter supported its finding that Dunn's choice to name BBANM and the Legislator Plaintiffs as plaintiffs was not motivated by a reasonable belief that they had standing.

Before moving on from the issue of Rule 11 sanctions, we emphasize that "the central purpose of Rule 11 is to deter baseless filings in district court and thus . . . streamline the administration and procedure of the federal courts." *Cooter & Gell*, 496 U.S. at 393.  "Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay." *Id.* at 398.  This case is a prime example of the waste and distraction that result when attorneys disregard Rule 11's certifications.  At the heart of this case lies Darlene Collins's allegation that her constitutional rights were violated when she was detained by the state of New Mexico.  But because of the various parties unreasonably named in the complaint by Plaintiffs' attorneys, this case instead was broadly pled to include entities and individuals whose standing to sue, or whose immunity from suit, became the main focus of the litigation.

V

"We ordinarily review a denial of a motion to amend a pleading for abuse of

discretion." *Miller ex rel. S.M. v. Bd. of Educ.*, 565 F.3d 1232, 1249 (10th Cir.

2009). "However, when denial is based on a determination that amendment would be

futile, our review for abuse of discretion includes de novo review of the legal basis

for the finding of futility." *Id.* at 1249.

While Defendants' motion to dismiss and motion for Rule 11 sanctions were

pending, Plaintiffs sought leave to amend their complaint to add a new claim: that

Defendants violated Plaintiffs' First Amendment right to freedom of speech by

moving for sanctions. App. Vol. II at 397. The district court denied the motion to

amend as futile because "[t]he First Amendment does not protect frivolous claims,"

so the "Rule 11 Motion was not a retaliatory act to punish Plaintiffs, but rather, an

acceptable pleading expressly allowed by the Federal Rules of Civil Procedure."

App. Vol. III at 673–74.

"[T]he right of access to the courts is an aspect of the First Amendment right

to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v.

NLRB*, 461 U.S. 731, 741 (1983). But "[t]he [F]irst [A]mendment interests involved

in private litigation . . . are not advanced when the litigation is based on . . .

knowingly frivolous claims." *United States v. Ambort*, 405 F.3d 1109, 1117 (10th

Cir. 2005) (quoting *Bill Johnson's Rests.*, 461 U.S. at 743); *see also In re Harper*,

725 F.3d 1253, 1261 (10th Cir. 2013) ("[T]he First Amendment does not protect the

filing of frivolous motions."). As discussed when affirming the district court's

imposition of Rule 11 sanctions, Plaintiffs' arguments regarding standing and

immunity were baseless.  Therefore, the district court correctly found that Plaintiffs'

motion to amend was futile; Defendants' motion for Rule 11 sanctions did not

interfere with Plaintiffs' First Amendment rights.  *See King*, 899 F.3d at 1151 n.17

("[T]he First Amendment is in no way a defense to Rule 11 violations.").

**VI**

We AFFIRM.